UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 06-056-KKC

ROSE VANCE,                                                                                                    PLAINTIFF,

V.                         **MAGISTRATE JUDGE'S
                            REPORT AND RECOMMENDATION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                                          DEFENDANT.

* * * * * * *


INTRODUCTION

The instant action is one for judicial review of a decision denying Plaintiff's application for a period of disability and disability insurance benefits. [DIB.] The matter is currently pending before the undersigned for issuance of a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1). [Record No. 6.] The parties having filed cross-motions for summary judgment, [Record Nos. 4, 5], the matter is now ripe for review.


FACTUAL BACKGROUND

On August 4, 2003, Rose Vance [Vance] filed an application for a period of disability and DIB, alleging that she suffered from rheumatoid arthritis, underactive thyroid, and allergies which became disabling on July 31, 2003. [Tr. 55, 147-48.] Her claim was denied initially on November 13, 2003, and upon reconsideration on January 20, 2004. She requested, and was granted, hearings at which she appeared with counsel and testified on July 5, 2005, and on October 19, 2005. [Tr. 26,

1

47.] Following the hearings, the Administrative Law Judge [ALJ] denied her claim for benefits finding that she retained the ability to engage in her past relevant work. [Tr. 22.] This appeal followed.

## LEGAL STANDARD

The general issue presented to an ALJ is whether a claimant is entitled to a period of disability and disability insurance benefits under the Social Security Act. In determining whether a claimant is disabled, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. This process was summarized by the Sixth Circuit Court of Appeals in Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

336 F.3d at 474 (internal citations omitted).

At the first step of the sequential evaluation process the ALJ considers whether a claimant has engaged in substantial gainful activity since the date of his application. At step two, the ALJ must determine whether the claimant suffers from medically determinable impairments that are severe within the meaning of the Regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. At step 3, an ALJ must find whether any medically determinable impairments meet or medically equal an impairment in the Listings. see generally 20 C.F.R. pt. 404, subpt. P, app. 1. At

the fourth step, the ALJ must consider whether, in light of his residual functional capacity, the Plaintiff retains the ability to perform past relevant work. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). At the fifth and final step, relying on the testimony of the VE and taking into consideration Plaintiff's age, educational background, past relevant work experience, and residual functional capacity (hereinafter "RFC"), the ALJ must determine whether the Plaintiff is capable of making a successful adjustment to work existing in significant numbers in the national economy.

Judicial review of a decision by an ALJ is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1368-1369 (6th Cir. 1991). Substantial evidence is "such evidence as a reasonable mind shall accept as adequate to support a conclusion." It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). If the Commissioner's decision is supported

by substantial evidence, a reviewing court must affirm. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

## ANALYSIS

In evaluating Vance's claim, the ALJ applied the five-step sequential evaluation process and found that Vance had not engaged in substantial gainful activity since the alleged onset of disability. [Tr. 18.] At the second step, the ALJ found that her medically determinable impairments of rheumatoid arthritis, fibromyalgia, allergies, and reactive airway disease were severe within the meaning of the Regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. [Tr. 18-20.] At step three the ALJ found that her medically determinable impairments did not meet or medically equal an impairment in the Listings. See generally 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 20.] At the fourth step, the ALJ found that, considering her residual functional capacity, Vance was able to perform her past relevant work, and on this basis denied her application for benefits. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). [Tr. 22.] The ALJ described her residual functional capacity as follows:

> Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; sit, stand, and/or walk about 6 hours each per 8-hour day; occasionally climb ramps/stairs; frequently crawl; and never climb ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.

[Tr. 20.]

In finding that Vance could engage in her past relevant work, and denying the application for benefits, the ALJ made the following finding regarding her past relevant work in light of her residual functional capacity:

> The claimant performed her past relevant work as light and semi-skilled. This job is considered light as performed by the claimant because she transported children to and from foster homes. About once every three months she had to carry babies weighing up to about 20 pounds to and from her car. Apart from that, there was little to no lifting. The claimant drove three times per week. Otherwise, she performed sedentary office duties.

[Tr. 22].

In support of her motion for summary judgment, Vance asserts that the ALJ committed a series of errors, in particular: 1) the ALJ gave inappropriate weight to evaluating physicians and one who conducted a paper review of the file; 2) erred in understanding fibromyalgia and subsequently failed to re-contact a treating physician; 3) erred in evaluating Vance's pain, credibility and subjective complaints and in evaluating her daily activities; and, 4) erred in formulating a hypothetical question that did not include memory problems and fatigue when driving all day or using hands to operate a computer on the job. For clarity, this opinion will address Vance's claims in the order presented.

I.    Vance first argues that the ALJ erred by giving inappropriate weight to both the evaluating physicians and one physician who conducted only a paper review of the file.

Generally, the weight to be given to the opinions of a treating physician compared with the

weight to be given to those of an examining or consultative physician depends on several factors. "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Further, all of the general rules about the weight to be given to a particular class of physicians' medical opinions presumes that the physician's opinion is based on objective medical findings, or what the regulations call "supportability". See 20 C.F.R. § 404.1527(d)(3); Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Other factors which are to be considered in deciding how much weight to afford to a medical opinion are consistency, specialization, and the length, nature, and extent of the treating relationship, if one exists. See 20 C.F.R. § 404.1527(d). Ultimately, however, "the determination of disability is the prerogative of the [Commissioner], not the [ ] physician," and the Commissioner is not bound by the physician's medical opinions. Houston, 736 F.2d at 367.

In the instant matter, the ALJ notes that Dr. Poore, claimant's primary treating physician, diagnoses severe rheumatoid arthritis, coronary artery disease, hypertension, gastroesophageal reflux disease, fibromyalgia, multiple allergies, fatigue, hypothyroidism, a history of bleeding ulcers, and depression. [Tr. 21]. However, Dr. Poore's treatment is primarily for sinusitis and bronchitis, and rather mild pulmonary problems. [Tr. 21]. Otherwise his diagnoses are lacking in objective clinical findings to support the diagnoses made. In addition, the treatment records of Dr. Goldfarb reveal only one occasion on which the claimant was tested for fibromyalgia, September 19, 2001, and otherwise reflect continuous improvement over time. In May 2005, Dr. Goldfarb noted a history of a flare-up, but the joints looked very good and no medication changes were required. [Tr. 104]. He noted that Vance still had soreness in her hands, but very little synovitis on exam. [Tr. 102]. A

6

DEXA scan showed significant improvement in her hip. [Tr. 183].

As a result of the lack of objective findings by treating physicians, the ALJ was not compelled to give their opinions controlling weight, and did not err in relying upon the opinions of other physicians, in the case, Dr. Mancuso who reported that claimant had no joint deformities and no nodules, a normal range of motion, normal strength, normal sensation and no evidence of physical limitation. [Tr. 371-374]. This evidence is also more compelling in light of Vance's own testimony regarding her daily activities, which included: mopping and seweeping three times per month, doing laundry twice a week, and carrying laundry baskets with clothes in them. She testified that she cooks, does dishes, is able to drive for up to one hour without a break, and can shop for groceries alone. [ Tr. 70-72.]

Therefore, in light of the substantial evidence of record, supported by objective medical findings, the ALJ did not err in discounting the opinions of treating physicians whose opinions were not supported by objective clinical findings.


II.   The claimant argues that the ALJ erred by failing to recontacat a physician regarding fibromyalgia if he did not understand the manner in which it is diagnosed.

Concerning an ALJ's obligation to re-contact a medical source, regulations provide:

> When the evidence we receive from your treating physician or psychologist or other medical source is <u>inadequate for us to determine whether you are disabled</u>, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions. We will first re-contact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this

>by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

20 C.F.R. §§ 404.1512(e)(1) (emphasis added).

Although the Sixth Circuit has yet to delineate the exact nature of an ALJ's obligation to re-contact a medical source under 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1)[1], the consensus of decisions in other circuits is that for a claimant to obtain a remand on the basis of a failure to re-contact, it must be demonstrated that: (1) the records of the medical source are inconclusive or otherwise inadequate for purposes of rendering a disability determination; (2) considered in its entirety, the medical evidence is insufficiently developed; and (3) failure to re-contact the medical source resulted in prejudice to the claimant. See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Gallegos v. Barnhart, 2003 U.S. App. LEXIS 21674, *3 (9th Cir. Oct. 22, 2003); Newton v. Apfel, 209 F.3d 448, 453, 458 (5th Cir. 2000); White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002); Garcia v. Barnhart, 2005 U.S. Dist. LEXIS 19579, *4 n. 3 (E.D. Pa. Sept. 6, 2005); Washington v. Barnhart, 2005 U.S. Dist. LEXIS 4835, *19-20 (E.D. Pa. Mar. 25, 2005); Pearson v. Barnhart, 2005

---

[1] In Persell v. Sec'y of Health & Human Servs., a Sixth Circuit decision, the claimant sought a remand on the basis of an ALJ's failure to re-contact under 20 C.F.R. § 404.1512(e)(1). 1994 U.S. App. LEXIS 26840, *9-10 (6th Cir. Sept. 21, 1994). However, the argument was summarily rejected because the portion of the Regulation relating to the duty to re-contact was promulgated by amendment to the Regulation six months after the administrative decision. Id. Other than reciting some of the language in the Regulation, the Persell decision does not establish an exact showing that a claimant must make in order to obtain a remand for a failure to re-contact under 20 C.F.R. § 404.1512(e)(1), or its supplemental security income counterpart 20 C.F.R. § 416.912(e)(1). Furthermore, the decision does not address the threshold requirement of inadequacy. Littlepage v. Chater, another Sixth Circuit decision confronted with an ALJ's obligation to re-contact under 20 C.F.R. § 404.1512(e)(1), is similarly unhelpful. 1998 U.S. App. LEXIS 688 (6th Cir. Jan. 14, 1998). In Littlepage, the Court held that the duty to re-contact was not triggered when an ALJ discounted unsupported medical conclusions of a claimant's treating physician. Id. at *10. The Littlepage decision stands only for the proposition that a medical assessment containing unsupported medical conclusions is not necessarily inadequate for purposes of 20 C.F.R. § 404.1512(e)(1). The Littlepage decision does not otherwise establish a showing that a claimant must make in order to obtain a remand for a failure to re-contact under 20 C.F.R. § 404.1512(e)(1), or its supplemental security income counterpart 20 C.F.R. § 416.912(e)(1).

U.S. App. LEXIS 11354, *14 (E.D. Tex. May 23, 2005); Kindle v. Barnhart, 2005 U.S. Dist. LEXIS 3797, *19-21 (E.D. Tex. Jan. 24, 2005); Bodin v. Barnhart, 2004 U.S. Dist. LEXIS 27384, *13, 17 (E.D. Tex. Aug. 11, 2004); Frost v. Barnhart, 2004 U.S. Dist. LEXIS 8062, *35-36 (D. Me. May 7, 2004); Reed v. Apfel, 1999 U.S. Dist. LEXIS 18432, *44-45 (S.D. Ala. Oct. 28, 1999).[2]

Concerning the ALJ's obligation to re-contact a physician in this matter, it is clear that none of the requisite criterion are satisfied: the records of the medical source are not inconclusive or otherwise inadequate for purposes of rendering a disability determination; considered in its entirety, the medical evidence is not insufficiently developed; and, failure to re-contact the medical source did not result in prejudice to Vance.

The ALJ noted that Vance was diagnosed with fibromyalgia by Dr. Goldfarb in September 2001 when that physician found 18 out of 18 tender points upon physical examination. [Tr. 297-299.] However, this is the only occasion on which such testing occurred, and the medical records from treating physicians otherwise show improvement since 2001. In September 2003, Vance reported subjective complaints without synovitis. [Tr. 21, 110.] In February 2004, Dr. Goldfarb remarked that Vance was "doing well" with some isolated joint problems on exam which, functionally, were not a problem. [Tr. 21, 106.] On August 17, 2004, the records reveal that Vance

---

[2] A few courts have expanded the applicability of 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) to include situations where an ALJ rejects the opinion of a medical source because of internal inconsistencies or a lack of objective findings. See McDonald v. Barnhart, 1998 U.S. Dist. LEXIS 4783, *19 (N.D. Tex. Mar. 31, 1998); Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000); Corey v. Barnhart, 2002 U.S. Dist. LEXIS 7146, *15-16 (S.D. Ind. Mar. 14, 2002). These cases, however, are in the minority and are inconsistent with the plain language of the Regulations. It is true that the Regulations provide that the medical source will be contacted if the report contains a conflict, ambiguity, or lacks support from objective findings. However, the requirement for additional information is triggered only when the evidence is inadequate to make a determination regarding the claimant's disability. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Gallegos v. Barnhart, 2003 U.S. App. LEXIS 21674, *3 (9th Cir. Oct. 22, 2003); White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

was doing well with no evidence of active disease on exam and stable fibromyalgia. [Tr. 21, 109.]

In summary, a review of the record reveals that the medical evidence of record from the treating physicians before the ALJ were not inconclusive or otherwise inadequate for purposes of rendering a disability determination. In addition, the evidence, considered in its entirety, is not insufficiently developed, and, as a result, failure to re-contact the medical source did not result in prejudice to Vance.

III.     Vance's third claim of error is that the ALJ erred in evaluating Vance's credibility, subjective complaints and daily activities.

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. See Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. See Villarreal v. Secretary of Health and Human Servs., 818 F.2d 461, 463 (6th Cir.1987). Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. See Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383, 386-87 (6th Cir.1978). In the instant matter, the ALJ's opinions regarding claimant's credibility are supported by substantial evidence of record. Vance's own testimony regarding her daily activities included: mopping and sweeping three times per month, doing laundry twice a week, and carrying laundry baskets with clothes in them. She testified that she cooks, does dishes, is able to drive for up to one hour without a break, and can shop for groceries alone. [ Tr. 70-

72.]

As noted above, the treatment records of Dr. Goldfarb reveal only one occasion on which the claimant was tested for fibromyalgia, September 19, 2001, and otherwise reflect continuous improvement over time: In May 2005, Dr. Goldfarb noted a history of a flare-up, but the joints looked very good and no medication changes were required. [Tr. 104]. He noted that Vance still had soreness in her hands, but very little synovitis on exam. [Tr. 102]. A DEXA scan showed significant improvement in her hip. [Tr. 183]. The ALJ noted that Vance was diagnosed with fibromyalgia by Dr. Goldfarb in September 2001 when that physician found 18 out of 18 tender points upon physical examination. [Tr. 297-299.] However, this is the only occasion on which such testing occurred, and the medical records from treating physicians otherwise show improvement since 2001. In September 2003,Vance reported subjective complaints without synovitis. [Tr. 21, 110.] In February 2004, Dr. Goldfarb remarked that Vance was "doing well" with some isolated joint problems on exam which, functionally, were not a problem. [Tr. 21, 106.] On August 17, 2004, the records reveal that Vance was doing well with no evidence of active disease on exam and stable fibromyalgia. [Tr. 21, 109.]

IV.     Finally, Vance alleges that the ALJ committed error in formulating hypothetical questions that did not include memory problems and fatigue when driving all day or using hands to operate a computer on the job. As a result, Vance alleges that it was improper to rely on the answers to these hypothetical questions to deny benefits. However, the record reveals that Vance's claim was denied at Step 4 of the sequential evaluation process. At Step 4, the ALJ considered whether, in light of her residual functional capacity, Vance retained the ability to perform past relevant work. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Her claim was denied at Step 4 when the ALJ

11

found that she was capable of engaging in past relevant work. [Tr. 22.] The issue of hypothetical questions does not arise in the sequential evaluation process until at Step 5 where testimony of the VE is offered in light of Plaintiff's age, educational background, past relevant work experience, and residual functional capacity to determine whether the Plaintiff is capable of making a successful adjustment to work existing in significant numbers in the national economy. As Vance's claim was not denied based upon testimony from a Vocational Expert in response to a hypothetical question from the ALJ, the issue of a properly phrased hypothetical question is irrelevant. Vance's denial came upon a finding by the ALJ that she possessed the residual functional capacity to perform past relevant work, at Step 4 of the evaluation. Therefore, any claim of error based upon an improper hypothetical question cannot form the basis for a reversal in this matter.

For the reasons stated herein, it will be the undersigned's recommendation that the Plaintiff's motion for summary judgment be denied, and the Defendant's motion be granted.

## CONCLUSION

Therefore, for the reasons set forth above, it is recommended that: Defendant Commissioner's motion for summary judgment [Record No. 5] be granted; Plaintiff's motion for summary judgment [Record No. 4] be denied; Judgment be entered affirming the Commissioner's final decision and dismissing this action with prejudice; and, that this action be stricken from the Court's docket.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750

(E.D. Ky. 2002).   General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

  Signed April 16, 2007.

